# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2879

_____

Frederick W. Hopkins, M.D., M.P.H.

*Plaintiff - Appellee*

v.

Larry Jegley, Prosecuting Attorney for Pulaski County; Steven L. Cathey, M.D., Chair of the Arkansas State Medical Board; Robert Breving, Jr., M.D. officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; Bob Cogburn, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; William F. Dudding, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; Omar Atiq, M.D.,officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; Veryl D. Hodges, D.O., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; Marie Holder, officer and member of the Arkansas State Medical Board, and successors in office, in her official capacity; Larry D. Lovell, officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; William L. Rutledge, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; John H. Scribner, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; Sylvia D. Simon, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in her official capacity; David L. Staggs, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity; John B. Weiss, M.D., officer and member of the Arkansas State Medical Board, and successors in office, in his official capacity

*Defendants - Appellants*

------------------------------

Eagle Forum Education & Legal Defense Fund

*Amicus on Behalf of Appellant(s)*

National Association of Social Workers; Arkansas Abortion Support Network; Pennsylvania Coalition Against Rape; Margaret Drew; State of New York; State of California; State of Connecticut; State of Delaware; State of Hawaii; State of Illinois; State of Iowa; State of Maine; State of Maryland; State of Massachusetts; State of Oregon; State of Pennsylvania; State of Vermont; State of Virginia; State of Washington; District of Columbia; American College of Obstetricians and Gynecologists; Biomedical Ethicists; Constitutional Law Scholars

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: December 13, 2018
Resubmitted: July 9, 2020
Filed: August 7, 2020
[Published]
_____

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.
_____

PER CURIAM.

The Pulaski County Prosecuting Attorney and officers and members of the Arkansas State Medical Board appeal the district court's grant of a preliminary injunction preventing enforcement of four state laws that regulate abortion. The 91st Arkansas General Assembly of 2017 enacted the following: (1) the Arkansas Unborn

Child Protection from Dismemberment Abortion Act, Ark. Code Ann. §§ 20-16-1801 to 20-16-1807; (2) the Sex Discrimination by Abortion Prohibition Act, *id.* §§ 20-16-1901 to 20-16-1910; (3) an amendment concerning the disposition of fetal remains, *id.* §§ 20-17-801 to 20-17-802; and (4) an amendment concerning the maintenance of forensic samples from abortions performed on a child, *id.* § 12-18-108(a)(1).

On June 29, 2020, the Supreme Court issued its opinion in *June Medical Services L. L. C. v. Russo*, 140 S. Ct. 2103 (2020). In that case, the Court held unconstitutional a Louisiana law requiring doctors who perform abortions to have admitting privileges at a nearby hospital. Justice Breyer, writing for a plurality of the justices, concluded that "the extensive record [in the case] . . . support[ed] the District Court's findings of fact," which "mirror[ed] those made in *Whole Woman's Health*[1] in every relevant respect." *Id.* at 2113. As a result, the plurality held unconstitutional the Louisiana admitting-privileges law.

Chief Justice Roberts provided the critical fifth vote in favor of striking down the Louisiana admitting-privileges law. But he concurred in the judgment, not the plurality's reasoning. *Id.* at 2133 (Roberts, C.J., concurring in judgment). Chief Justice Roberts acknowledged that he had "joined the dissent in *Whole Woman's Health*" and expressed his continued belief "that the case was wrongly decided." *Id.* Nonetheless, Chief Justice Roberts agreed with the plurality that "Louisiana's law cannot stand under [the Court's] precedents." *Id.* at 2134. Under "[t]he legal doctrine of *stare decisis*," Chief Justice Roberts explained, "absent special circumstances, [the Court must] . . . treat like cases alike." *Id.* He concluded that because the Louisiana admitting-privileges law "impose[d] a burden on access to abortion just as severe as that imposed by the Texas law, for the same reasons," it is unconstitutional. *Id.*

---

[1]*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016).

Relevant to the present case, Chief Justice Roberts discussed at length the undue burden standard articulated in *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) (plurality opinion), in which the Court held that a state cannot "impose an undue burden on the woman's ability to obtain an abortion." *Id.* at 2135. Chief Justice Roberts rejected the "observation" made in *Whole Woman's Health* and again by the plurality "that the undue burden standard requires courts to weigh the law's asserted benefits against the burdens it imposes on abortion access." *Id.* (internal quotation omitted). According to Chief Justice Roberts, "[r]ead in isolation from *Casey*, such an inquiry could invite a grand 'balancing test in which unweighted factors mysteriously are weighed'" and lead to arbitrary results. *Id.* (quoting *Marrs v. Motorola, Inc.*, 577 F.3d 783, 788 (7th Cir. 2009)). In the context of abortion,

> courts applying a balancing test would be asked in essence to weigh the State's interests in "protecting the potentiality of human life" and the health of the woman, on the one hand, against the woman's liberty interest in defining her "own concept of existence, of meaning, of the universe, and of the mystery of human life" on the other.

*Id.* at 2136 (quoting *Casey*, 505 U.S. at 851, 871). "Pretending that we could pull that off," Chief Justice Roberts observed, "would require us to act as legislators, not judges." *Id.*

Chief Justice Roberts also addressed the discretion courts must afford to legislatures. He pointed out that "[n]othing about *Casey* suggested that a weighing of costs and benefits of an abortion regulation was a *job for the courts*." *Id.* (emphasis added). Instead, he emphasized that, in the abortion context, "state and federal legislatures [have] *wide discretion* to pass legislation in areas where there is *medical and scientific uncertainty*." *Id.* (alteration in original) (emphases added) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)).

According to Chief Justice Roberts, the appropriate inquiry under *Casey* is whether the law poses "a substantial obstacle" or "substantial burden, not whether benefits outweighed burdens." *Id.* at 2137. To the extent that *Casey* "discussed the benefits of the regulations," it did so "in considering the threshold requirement that the State have a 'legitimate purpose' and that the law be 'reasonably related to that goal.'" *Id.* at 2138 (quoting *Casey*, 505 U.S. at 878, 882). "So long as that showing is made," Chief Justice Roberts concluded, "the only question for a court is whether a law has the 'effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.'" *Id.* (quoting *Casey*, 505 U.S. at 877). Chief Justice Roberts "adhere[d] to the holding of *Casey*, requiring a substantial obstacle before striking down an abortion regulation." *Id.* at 2139. As a result, Chief Justice Roberts concluded that "[i]n this case, *Casey*'s requirement of finding a substantial obstacle before invalidating an abortion regulation is therefore a sufficient basis for [striking down the Louisiana admitting-privileges law], [just] as it was in *Whole Woman's Health*." *Id.* Nothing in *Casey* required "consideration of a regulation's benefits." *Id.*

Chief Justice Robert's vote was necessary in holding unconstitutional Louisiana's admitting-privileges law, so his separate opinion is controlling. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (explaining that when "no single rationale explaining the result [of a case] enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.))). In light of Chief Justice Roberts's separate opinion, "five Members of the Court reject[ed] the *Whole Woman's Health* cost-benefit standard." *June Med. Servs.*, 140 S. Ct. at 2182 (Kavanaugh, J., dissenting).

Here, the district court—without the benefit of Chief Justice Roberts's separate opinion in *June Medical*—applied the *Whole Woman's Health* cost-benefit standard to the challenged laws. *See Hopkins v. Jegley*, 267 F. Supp. 3d 1024, 1055 (E.D. Ark.

2017), *amended*, No. 4:17-CV-00404-KGB, 2017 WL 6946638 (E.D. Ark. Aug. 2, 2017) ("The undue burden analysis requires this Court to 'consider the burdens a law imposes on abortion access together with the benefits those laws confer.'" (quoting *Whole Woman's Health*, 136 S. Ct. at 2309)).[2] In addition, the district court relied on

---

[2]*See also id.* ("When applying the undue burden test, this Court must 'weigh[] the asserted benefits against the burdens.'" (alteration in original) (quoting *Whole Woman's Health*, 136 S. Ct. at 2310)); *id.* at 1055–56 ("The regulation will not be upheld unless the benefits it advances outweigh the burdens it imposes."); *id.* at 1056 ("Defendants also argue that the Court should not engage in a balancing test when conducting the undue burden analysis . . . . The Court rejects this argument."); *id.* at 1064 ("In *Whole Woman's Health*, the Supreme Court clarified that the undue burden analysis 'requires that courts consider[] the burdens a law imposes on abortion access together with the benefits those laws confer.'" (quoting *Whole Woman's Health*, 136 S. Ct. at 2309)); *id.* at 1064 ("Therefore, the Court concludes that the D & E Mandate does not 'confer[] benefits sufficient to justify the burden upon access that [it] imposes." (alterations in original) (quoting *Whole Woman's Health*, 136 S. Ct. at 2299); *id.* at 1070 ("In *Whole Woman's Health*, the Supreme Court clarified that this undue burden analysis 'requires that courts considers the burdens a law imposes on abortion access together with the benefits those laws confer.'" (quoting *Whole Woman's Health*, 136 S.Ct. at 2309)); *id.* at 1073 ("When certain records related to a specific medical issue are requested, unless the records are transmitted and received very quickly, any medical benefit of waiting for the records is outweighed by the fact that delaying abortion care increases the risks associated with the procedure for the patient." (internal citation omitted)); *id.* at 1077 ("When certain records related to a specific medical issue are requested, unless the records are transmitted and received very quickly, any medical benefit of waiting for the records is outweighed by the fact that delaying abortion care increases the risks associated with the procedure for the patient."); *id.* at 1079 ("The burdens of the [Medical Records] Mandate will substantially outweigh its benefits, based on the record before this Court for the reasons explained."); *id.* at 1092 ("[T]he *Whole Woman's Health* Court said . . . 'the virtual absence of any health benefit' from the challenged hospital affiliation requirement was a factor to be weighed in making an undue burden ruling. Balancing is therefore required." (internal citation omitted) (quoting *Whole Woman's Health*, 136 S. Ct. at 2313)); *id.* at 1098 ("In *Whole Woman's Health*, the Supreme Court

*Whole Woman's Health*'s "holding that the 'statement that legislatures, and not courts, must resolve questions of medical uncertainty is . . . inconsistent with this Court's case law.'" *Id.* at 1058 (alteration in original) (quoting *Whole Woman's Health*, 136 S. Ct. at 2310). Chief Justice Roberts, however, emphasized the "wide discretion" that courts must afford to legislatures in areas of medical uncertainty. *June Med. Servs.*, 140 S. Ct. at 2136 (Roberts, C.J., concurring in judgment) (quoting *Gonzales*, 550 U.S. at 163).

As a result, we vacate the district court's preliminary injunction and remand for reconsideration in light of Chief Justice Roberts's separate opinion in *June Medical*, which is controlling, as well as the Supreme Court's decision in *Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780 (2019) (per curiam).

———————————————

clarified that this undue burden analysis 'requires that courts considers the burdens a law imposes on abortion access together with the benefits those laws confer.'" (quoting *Whole Woman's Health*, 136 S. Ct. at 2309)).